# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3364 | **DATE** | 8/2/2000 |
| **CASE TITLE** | Lepper vs. Kenneth S. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, plaintiff's request for a writ of a mandamus is denied, and the Commissioner's motion to dismiss is granted. Judgment is entered dismissing this action for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 3 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 22 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 AUG -2 PM 4:44 | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. LEPPER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99 C 3364 |
| | ) | |
| KENNETH S. APFEL, Commisioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Social Security Administration denied Robert Lepper's request under Title II of the Social Security Act, 42 U.S.C. §§ 416 and 423, to reopen his application for disability insurance benefits. Lepper appeals this decision, challenges the constitutionality of the denial of his right to review and, pursuant to 28 U.S.C. §1361, seeks a writ of mandamus to compel the Commissioner of the Social Security Administration to reopen his claim. The Commissioner has moved to dismiss for lack of subject matter jurisdiction.

### Background

Lepper first applied for disability benefits ten years ago, in September 1990, complaining that he had a work-related back injury, chronic pain and inflamation in his lower arm, hands and wrists, arthritis, and high blood pressure. The Commissioner denied Lepper's claim, finding that there was no evidence of paralysis or tremor in his wrist or arm, nor any problems with his

1

reflexes, and that he was able to move about freely without the assistance of a cane or crutch. While his condition prevented him from doing his past job, the Commissioner found that he was able to do other types of less demanding work. Lepper asked the Commissioner to reconsider and submitted additional medical evidence and information; Lepper offered evidence of his DeQuervain's disease, a surgery he had on his left knee and also claimed that overall his condition had worsened. The Commissioner evaluated this new evidence and once again determined that Lepper had no medical condition that would limit his ability to perform work-related activities.

Lepper then filed a request for review by an Administrative Law Judge. On January 29, 1992, after conducting a hearing where Lepper testified on his own behalf and after reviewing the medical evidence, the ALJ found that Lepper did not have a disabling impairment or combination of impairments as defined by the Administration. The ALJ also found that Lepper's complaints of disabling pain were not completely credible based on the objective medical evidence and testimony as to his activities of daily living.

On February 3, 1992, Lepper submitted a request for review of the ALJ's decision to the Social Security Administration's Appeal's Council. On July 27, 1992, after re-reviewing the evidence and the "new" material Lepper submitted, which the Council found to be indistinguishable from what had already been described and considered by the ALJ, the Council denied Lepper's request for review, finding no abuse of discretion or error of law by the ALJ, and it gave him a 60-day extension of time in which to file a civil suit to appeal the ALJ's findings. On October 28, 1992 the Appeals Council again denied Lepper's request for review and gave him an additional 60 days to file a civil suit.

On December 17, 1992, the Council denied another request for review but this time did not give Lepper another extension. Lepper then had only ten days to commence a civil action. He called the regional Social Security Administration office and says he was told by a telephone operator or clerk that it would not be advisable for him to file a lawsuit challenging the ALJ's decision. Lepper decided not to file a civil suit; he claims he was following the clerk's advice. Because he failed to appeal, the decision on his application became final and binding on July 22, 1992 – the date the Appeals Council denied his request for review. *See* 42 U.S.C. §§405 (g)-(h).

About a year later, on October 13, 1993, Lepper filed a new application for disability insurance benefits. He says he was seeking reopening of his initial application. However, the Commissioner denied Lepper's application, apparently because his eligibility to receive benefits (his "insured status") had expired in September 1991. It therefore did not make a decision about whether Lepper qualified as disabled. Lepper did not seek agency review; instead, he filed another new application on January 23, 1995, which was again denied for the same reason. Lepper sought agency review of this dismissal. He filed a request for hearing before an ALJ, claiming that his injuries and hypertension had worsened since he filed his first claim in 1990. The ALJ dismissed Lepper's request for a hearing, concluding that the additional evidence submitted by Lepper all concerned his condition since September 30, 1991, when his insured status had expired. The ALJ declined to open Lepper's 1990 claim. The Appeals Council affirmed.

Lepper filed his fourth and final application for disability insurance benefits on March 22, 1996, complaining of hypertension, arthritis, and pain in his wrists, neck, right shoulder, elbows, left knee, and lower back. The Commissioner denied this application, and Lepper requested a

hearing before an ALJ. On February 28, 1997, the ALJ denied Lepper's request, finding that Lepper had submitted no new evidence concerning his condition prior to January 29, 1992, the date his original application was denied. The ALJ also found that there was no good cause to reopen Lepper's 1990 claim. The Appeals Council denied Lepper's requests for review on August 22 and September 2, 1997. Acting *pro se*, Lepper filed this action on May 20, 1999. The Court, on its own motion, appointed counsel to represent Lepper.

## Discussion

Title II of the Social Security Act provides disability benefits for a claimant who demonstrates that he suffers a physical or mental disability that arose prior to the expiration of his insured status. 42 U.S.C. §§416(1), 423. If the Social Security Administration denies the claim, the claimant has six months to seek administrative reconsideration; that is if denied, the claimant may ask for an evidentiary hearing before an ALJ within sixty days; and if the ALJ's findings are adverse to the claimant, he or she may then seek review before the Appeals Council. 42 U.S.C. §405(b); 20 C.F.R. §§404.945-404.947 (1976). Federal court review of an ALJ decision can be obtained by commencing a civil action within sixty days after notice of the ALJ's decision, or within a time prescribed by the Commissioner. 42 U.S.C. §405(g).

A civil action is permitted, however, only on a final decision of the Commissioner made after a hearing. *Id.* Where the Commissioner decides not to reopen a claim, that decision does not constitute a final decision after a hearing as required for judicial review. *Califano v. Sanders*, 430 U.S. 99, 108 (1977); *Bolden v. Bowen*, 868 F.2d 916, 919 (7th Cir. 1989); *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985); *cf. Steebe v. United States Railroad Retirement Board*, 708 F.2d 250, 255 (7th Cir. 1983) (analogizing Railroad Retirement Act Claims to those

4

claims filed under the Social Security Act). Thus, district courts have no jurisdiction to review the Commissioner's refusal to reopen a claim for disability benefits. *Id.* The purpose of "Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims." *Sanders*, 430 U.S. at 108.

Lepper seeks review of the Commissioner's denial of his March 22, 1996 application. Because this application involved the same facts and issues decided in his 1990 application for benefits, the ALJ and Council held that the decision on his 1990 claim had an administrative *res judicata* effect on his 1996 application. The ALJ and Council further found that Lepper had failed to satisfy the criteria to reopen that original application, because (among other things) he had offered no new evidence concerning what his medical condition was at the time his original application was pending. As a result, the Commissioner argues that pursuant to *Sanders* and its progeny, this Court does not have subject matter jurisdiction to review the denial of Lepper's 1996 application, because in effect it amounted to a refusal to reopen the earlier application.

Lepper concedes that judicial review of the Commissioner's denial of a request to reopen is generally unavailable to a claimant. Pltf. Resp. at 9. He argues that the Court should nonetheless review his original application because he was misled by a clerk at the regional office who told him he would not benefit from filing a civil suit. According to Lepper, the fact that the ALJ's decision was issued on the eve of the expiration of the period for filing his appeal (he had ten days to file suit over the December holidays), coupled with this advice from the clerk, means that a manifest injustice would occur if his claim were not reopened. He says the Commissioner should be estopped from claiming his civil suit is barred, as he was wrongly

5

persuaded not to seek judicial review of his original claim.

Lepper's estoppel argument, however, does not get him past the jurisdictional hurdle. There is no authority for Lepper's position that principles of estoppel can overcome the clear jurisdictional limitations set by Congress. *See, e.g., Bolden*, 868 F.2d at 918 (holding that district court had no jurisdiction to review Commissioner's refusal to reopen earlier claim despite plaintiff's argument that she had been misled by a clerk concerning her rights to review). Moreover, Lepper's evidence supporting his estoppel claim (his affidavit stating that he relied on the clerk's advice not to file a civil suit) is fairly weak, considering that the Appeals Council repeatedly notified him of his right to file a civil action and the time limits for doing so. Lepper claims he had only ten days from the Appeals Council's December 17, 1992 letter to file a civil appeal, but this is beside the point, as the Appeals Council had twice previously notified him of his right to file a lawsuit. His first notification was five months earlier – in July 1992 – and the second was in October, and with both notices the Appeals Council gave him an additional 60 days to file an appeal. Additionally, the clerk's comment that Lepper "probably would not want to file a civil action, because it would take a long time to be resolved or settled," *see* Pltf. Ex. 15 at ¶6, even if it was bad advice, is not egregious enough to support a claim of estoppel. Indeed, the clerk's advice did not provide a basis for a reasonable person not to file a civil action. Even if it would take a long time to pursue a civil suit, at least it would provide Lepper with a chance to prevail; without filing a civil action, he had no chance to overturn the ALJ's decision. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 790 (1981) (per curiam) (denying benefits to claimant because clerk's errors fell short of conduct that would raise serious question whether Commissioner was estopped from insisting upon compliance with valid regulations).

Lepper next argues that we should be permitted to review his claim because incomprehensible and misleading rulings on his subsequent applications resulted in a manifest injustice, as these rulings confused the procedures he needed to follow to obtain review of his original claim.[1] Lepper's argument fails for the simple reason that the rulings on his subsequent applications were made *after* his time to seek review of his original claim expired. The allegedly incomprehensible and misleading rulings were made in 1993, 1995 and 1996, well after his December 1992 deadline for filing a civil suit.

Moreover, we disagree with Lepper that these rulings were "incomprehensible." The Commissioner's branch office denied Lepper's subsequent applications based on his inability to qualify for benefits (lack of insured status). It then instructed Lepper on how to seek review, and the ALJ's decisions on review were unambiguous. The ALJ dismissed Lepper's subsequent claims on administrative *res judicata* grounds. To the extent the ALJ or Appeals Council did consider evidence, it was either to determine whether "good cause" existed to reopen Lepper's claims or to consider what Lepper claimed was "new evidence" at the time his original application was pending (*i.e.*, in 1990-1991). There was nothing ambiguous or incomprehensible about these decisions.

To get around the jurisdictional hurdle, Lepper next argues that the ALJ's hearing on his original application was inadequate. District courts have jurisdiction to review non-final decisions of the agency in those "rare instances where [the Commissioner's] denial of a petition

---

[1] Lepper's subsequent applications were preliminarily denied on the basis of insufficient work credits, a finding Lepper says was irrelevant to the reopening of his original claim, which was filed when he had sufficient credits.

to reopen is challenged on constitutional grounds." *Sanders*, 430 U.S. at 109. Where constitutional questions are in issue, the availability of judicial review and the Court's jurisdiction are presumed.

Lepper says that the ALJ's findings were constitutionally deficient because they failed to deal with Lepper's evidence that he suffered from degenerative arthritis (in his left knee and both wrists), and because the finding that Lepper could perform some security guard jobs was contradicted by the testimony of the ALJ's vocational expert. While we seriously question whether such deficiencies in the ALJ's decision would be of constitutional dimension,[2] it is the agency's refusal to reopen the decision that must implicate constitutional issues, not the initial decision itself. *Steebe*, 708 F.2d at 254; *Blackburn v. Heckler*, 615 F.Supp. 908, 912-13 (N.D. Ill. 1985) (the "constitutional grounds" exception to a district court's lack of jurisdiction cannot be invoked on the theory that a claimant's due process rights were violated on the agency's initial decision); *but see Thompson v. Schweiker*, 665 F.2d 936, 939-40 (9th Cir. 1982) (finding the ALJ's initial determination that the claimant qualified for gainful employment constitutionally unsound, considering the medical evidence of the claimant's epilepsy and alcoholism and his continuous hospitalization). Thus, the alleged deficiencies in the hearing on Lepper's original

---

[2] Though Lepper argues that the ALJ failed to make any findings on his degenerative arthritis, the ALJ did note in his decision that Lepper's arthritis profile came out negative. Pltf. Ex. 9, at 4 -5. We also disagree with Lepper's argument that the ALJ's finding that he could perform some security guard jobs was contradicted by the testimony of the ALJ's vocational expert. The vocational expert testified hypothetically that if Lepper had "gross manipulation" difficulties in one arm, he could perform half of the available security jobs, while if he had these difficulties in both arms, it would likely limit him from performing any such jobs. Pltf. Ex. 6 at 37. Based on evidence from the consultative examiner Dr. Narendara Garg, Lepper had a severe impairment in only one wrist, not in both. Pltf. Ex. 9, at 4 -5.

8

application are not properly before us, and Lepper has given us no other basis upon which to invalidate the Commissioner's decision not to reopen his claim.

Finally, Lepper seeks a writ of mandamus. He asks that we remand his claim to the Administration because the Commissioner failed to conduct a proper review in determining whether to reopen his claim. Pursuant to 28 U.S.C. §1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In certain limited circumstances, section 1361 confers mandamus jurisdiction over Social Security-related claims that otherwise would not be reviewable by the district court. *See Burnett v. Bowen*, 830 F.2d 731, 737-39 (7th Cir. 1987).

Mandamus is an "extraordinary remedy"; the claimant's right to that relief must be "clear and undisputable." *Daley v. Apfel, Commissioner of Social Security*, No. 97 C 1650, 1998 WL 111638, at *5 (N.D. Ill. 1998) (citing *Banks v. Secretary of Indiana Family and Social Services Administration*, 997 F.2d 231, 244 (7th Cir. 1993)). District courts may issue a writ of mandamus when the claimant has a claim that challenges the procedures used in administering Social Security benefits but is unrelated to the merits of his request for benefits. *Burnett*, 830 F.2d at 738-39. Mandamus relief is intended to provide a claimant with a remedy only if he has a clear right to the relief sought, he has exhausted all other avenues of relief, and the defendant has a duty to do the act in question. *Id.* at 739.

Lepper argues that on his four subsequent applications for disability benefits, the Commissioner had a duty under 20 C.F.R. § 404.988(b) to determine if "good cause" existed to reopen ALJ Jensen's decision on his original claim. One way "good cause" exists is if the

evidence considered by the ALJ on Lepper's original application "clearly shows on its face that an error was made." 20 C.F.R. §404.989(c). Lepper says he did not receive the review mandated by that section. Because Lepper claims that the Commissioner never determined whether ALJ Jensen's prior determination was based on an error on the face of the evidence, his claim is procedural in nature and unrelated to the merits of his claim for benefits, as is required for mandamus jurisdiction to exist.

The next requirement Lepper must establish to support mandamus jurisdiction is "a clear right . . . to the relief sought." *Burnett*, 830 F.2d at 739. 20 C.F.R. §404.988(b) provides that a determination or decision of an ALJ may be reopened within four years of the initial determination if good cause is found as is defined in 20 C.F.R. §404.989. Because Lepper's requests to reopen were all filed within four years of July 22, 1992 – the date his application became final and binding – he had a clear right to have an ALJ consider whether he established "good cause" under §404.988(b).

The Commissioner seems to argue that Lepper cannot demonstrate a clear right to the relief requested because his request for reopening would fail even if an ALJ reviewing that request did do the proper review under 20 C.F.R. §§ 404.988(b) and 404.989(c). In other words, the Commissioner believes that Lepper's request for reopening would fail on the merits because the ALJ who originally considered his application for benefits did not make a clear error on the face of the evidence presented. But this is not the issue we address in deciding whether the right to seek mandamus exists. As in *Burnett*, the issue is not whether Lepper could in fact demonstrate good cause to reopen his claim, it is whether Lepper had a right to have an ALJ

10

make that determination in the first place.[3] *See Burnett*, 830 F.2d at 739. And under 20 C.F.R. §§ 404.988(b) and 404.989(c), he had this right. *Id.*; *but cf. Jaskolka v. Apfel, Commissioner of Social Security*, No. 97 C 6536, 1998 WL 684228, at * 6 (N.D. Ill. 1998) (claimant could not demonstrate a clear right to the relief under mandamus statute by demonstrating that the ALJ failed to consider all pertinent information when determining whether good cause existed for extending the deadline to request review).

We next determine whether Lepper has exhausted all other avenues of relief. *Burnett*, 830 F.2d at 740. We believe that he has. All of his administrative remedies have been pursued, and as we have held, an ordinary civil action is unavailable; his last resort was to seek a writ of mandamus in this Court.

Lastly, before we can issue a writ of mandamus the Commissioner must have had a "plainly defined and peremptory duty to do the act in question." *Id.* at 739. As explained above, the ALJ had a duty on each of Lepper's subsequent applications to determine whether "good cause" existed to reopen his original application. He therefore had a duty to address any claim that there was an error on the face of the evidence considered by the ALJ on his initial application. Lepper argues that on the record, the Commissioner cannot say that this analysis was done. On two of Lepper's requests for reopening, no finding was made on whether there was an error on the face of the evidence. And twice the ALJ simply said that the evidence revealed no "error on the face of the evidence" without any explanation or discussion of the

---

[3] Indeed, as the Commissioner points out, and as explained above, absent a colorable constitutional claim, we have no jurisdiction to review the merits of Lepper's petition. *See Sanders*, 430 U.S. at 108.

evidence in question. Under *Burnett*, conclusory statements that new evidence was carefully considered are not enough, as such statements do not establish whether the ALJ gave full consideration to the new evidence in terms of re-opening the original application. *Burnett*, 830 F.2d at 740. New evidence must be properly considered at some level by an ALJ, otherwise there can be no meaningful review. *Id.* at 736 ("a written evaluation of every piece of testimony and submitted evidence is not required," but the ALJ must give some minimal assessment of the evidence) (citation omitted). The ALJs who reviewed the matter in 1995 and 1996 both stated that they had reviewed the purported new evidence offered by Lepper to determine whether it warranted reopening his case. They did not simply recite a boiler-plated rejection for Lepper's position. Rather the decisions reflect that the ALJs actually evaluated the evidence, as they would have had to do so in order to conclude, as they did, that the evidence did not concern Lepper's condition at the time his original application was pending. The Court concludes that the Commissioner discharged its duty to consider the additional evidence that Lepper had offered.

Lepper also argues that the ALJ who decided his original application failed to make a finding on his arthritis and that the finding on his ability to perform security jobs was inconsistent with evidence in the record, and that this warranted reopening the hearing. He contends that the ALJs on his subsequent applications dealt with these alleged "errors on the face of the evidence" in a cursory manner. But Lepper did not make this contention in these later applications (which the ALJs construed as requests to reopen); rather his arguments were based entirely on his purported new evidence. Under the circumstances, the ALJs' recitation that they had reviewed the evidence supporting the original decision and finding no "error on the face of

the evidence" was sufficient, there was no need for them to make elaborate findings on a point that Lepper had not made. In sum, though the agency had a duty to determine whether good cause existed to reopen Lepper's initial application, that duty was discharged by the decisions on each of Lepper's subsequent applications.

Lepper's counsel has made a valiant effort to find a basis for the Court to review his client's claim for benefits. Unfortunately, however, we lack jurisdiction to do so.

## Conclusion

For the reasons set forth above, plaintiff's request for a writ of mandamus is denied, and the Commissioner's motion to dismiss is granted. Judgment will enter dismissing this action for lack of subject matter jurisdiction. The Court thanks plaintiff's appointed counsel Jeffrey Madoff and Teri Firmiss Thompson for their outstanding work on plaintiff's behalf.

Dated: August 2, 2000

MATTHEW F. KENNELLY
United States District Judge